FILED

2026 Aug-05  PM 04:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **VULCAN CONSTRUCTION MATERIALS LLC,** | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| **ABS SERVICES INC,** | ) | |
| Defendant. | ) | |
| | ) | **2:25-cv-1151-EGL** |
| **ABS SERVICES INC,** | ) | |
| Counter Claimant, | ) | |
| v. | ) | |
| **VULCAN CONSTRUCTION MATERIALS LLC, et al.,** | ) | |
| Counter Defendants. | ) | |
| **ABS SERVICES INC,** | ) | |
| Third-Party Plaintiff, | ) | |
| v. | ) | |
| **BRAUN INTERTEC CORPORATION,** | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

ABS Services asserts counter claims against Vulcan Construction Materials LLC and third-party claims against Braun Intertec Corporation. *See* Docs. 10, 71. Vulcan moves to dismiss in part, Doc. 78, and Braun moves to dismiss all claims against it, Doc. 75. For the reasons below, Vulcan's motion (Doc. 78) is **GRANTED**, and Braun's motion (Doc. 75) is **GRANTED IN PART**.

## Background[1]

The Court explained the background of this case in its previous motion to dismiss order. *See* Doc. 69. A brief recap follows.

**1.** Vulcan owns a construction material production facility in Texas. Doc. 1 at ¶8. Pursuant to a contract with Vulcan, ABS Services agreed to engineer and build a "mechanically stabilized earth wall" for Vulcan to use as a dump structure. *Id.* at ¶9. ABS Services represented that the wall would meet a stated design life, conform to specifications, lack material defects, and satisfy industry standards. *Id.* at ¶¶10-13. Within a month of ABS Services completing the wall, it partially collapsed. *Id.* at ¶¶16-17. The collapse rendered the wall inoperable, unrepairable, and unsafe. *Id.* at ¶18.

---

[1] The Court accepts well-pleaded factual allegations as true and construes those allegations in the light most favorable to the plaintiff. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). Unless otherwise indicated, citations to paragraphs in Docs. 10, 71, 99-1, and 99-2 refer to the paragraphs in ABS Services' counterclaims and third-party claims.

Vulcan asserts two claims against ABS Services. First, it claims that ABS Services breached the contract because the wall did not last for the duration of the promised design life, contains material defects in design, material, and workmanship, and ABS Services failed to cure the defects. *See id.* at ¶¶21-28. Second, it claims that ABS Services breached warranties for the same reasons. *See id.* at ¶¶29-37.

**2.** ABS Services answered, asserted counterclaims against Vulcan, and asserted third-party claims against Braun. Doc. 10. ABS Services claims that Vulcan and its geotechnical engineering firm, Braun, were responsible for the wall's failure. *Id.* at ¶¶144-95. According to ABS Services, Vulcan relied on Braun to conduct soil verification, testing, and improvement and to produce a geotechnical report. *Id.* at ¶¶88-89. Vulcan decided to use limestone rock asphalt (LRA) as its base material for the wall, and Braun approved this change. *Id.* at ¶¶95, 99-103. ABS Services believes that the use of this base material caused the wall to fail to perform as expected. *Id.* at ¶¶105-15. ABS Services asserted nine claims, including a negligent misrepresentation claim against Vulcan and Braun, a negligence claim against Braun, and a breach of implied warranty claim against Vulcan. *Id.* at ¶¶144-95.

**3.** Vulcan answered. Doc. 16. Braun moved to dismiss all counts against it. Doc. 34. The Court dismissed ABS Services' breach-of-contract claim against Braun, ordered ABS Services to file an amended complaint that identified the

particular factual allegations it intended to incorporate in each count, and otherwise denied the motion to dismiss. Doc. 69.

**4.** ABS Services amended its answer. Doc. 71. In the new answer, ABS Services remedied the shotgun-pleading issue, added a defendant, and added several claims against Vulcan. Braun once again moved to dismiss all claims. Doc. 75. Vulcan also moved to dismiss, Doc. 78, challenging claims in the original complaint but also claims asserted against it for the first time in the amended complaint.

**5.** ABS Services sought leave to amend after Vulcan and Braun filed their motions to dismiss. Doc. 99. ABS Services attempts therein to add allegations to existing counts and to plead new claims against Vulcan. *Id.* at ¶¶185-237, 363-96. Vulcan and Braun oppose the motion. Docs. 103, 104.

## STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must accept as true all factual allegations in the

complaint, that principle does not apply to legal conclusions couched as factual allegations. *Id.*

## DISCUSSION

## I. Count I: Negligent Misrepresentation

ABS Services brings a negligent misrepresentation claim against Braun and Vulcan alleging that they negligently misrepresented that limestone rock asphalt was a suitable base material. Doc. 71 at ¶¶185-97. To succeed on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made a false representation that the plaintiff reasonably relied upon. *See Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1325 (N.D. Ala. 2019); *Holland v. Peoples Bank & Tr. Co.*, 3 So. 3d 94, 101 (Miss. 2008).

Braun and Vulcan argue that ABS Services' allegations fail under Federal Rule of Civil Procedure 9(b). Doc. 76 at 7-8; Doc. 78 at 4-6. Rule 9(b) requires a plaintiff "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." This rule applies to formal fraud claims but is not limited to such. Indeed, Rule 9(b) also applies to claims that sound in fraud, even if styled as claims like unjust enrichment, civil theft, or negligent misrepresentation. *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025).

Rule 9(b) is the governing standard for ABS Services' negligent misrepresentation claim. *See Grubbs v. Medtronic, Inc.*, No. 2:18-cv-1468, 2019 WL

5

3288263, at *5 (N.D. Ala. July 22, 2019). ABS Services does not contend otherwise; it instead argues that it satisfied that pleading standard. *See* Doc. 90 at 4-7; Doc. 91 at 3-6.

A plaintiff alleges negligent misrepresentation with sufficient particularity when the complaint identifies "the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). In other words, the complaint must "set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Reach Air Med. Servs. LLC v. Kaiser Found. Health Plan Inc.*, 160 F.4th 1110, 1121 (11th Cir. 2025) (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)).

ABS Services alleges that Braun and Vulcan "represented to ABS verbally and in writing, including in the revised geotechnical report prepared by Braun and issued to ABS by Vulcan, stating that Vulcan's naturally occurring LRA could be substituted for base material including Flexbase on the Project" and that "naturally occurring LRA met the specification for base material to be provided by Vulcan on the project and directed ABS to construct the ABS MSE Dump Structure on the six

(6) to nine (9) feet of LRA." Doc. 71 at ¶¶187-88; *see also id.* at ¶108 (alleging Braun "approved the substitution of the Vulcan LRA"); *id.* at ¶109 (Braun "issued a final geotechnical report for the project dated July 5, 2024, which provided that the Vulcan LRA could be substituted for conventional limestone rock aggregate Flexbase material"); *id.* at ¶185 (incorporating previous allegations and others).

ABS Services' allegations fall short of the specificity required under Rule 9(b). Start with the allegations that Vulcan and Braun "verbally" approved LRA. *Id.* at ¶¶187-88. ABS Services does not allege who made the representations, when they were made, the precise statements, or anything aside from the vague allegation that Vulcan and Braun verbally misled them. A negligent misrepresentation claim cannot rest on an allegation pleaded so generally. *Cf. Recreational Design & Constr., Inc. v. Wiss, Janney, Elstner Assocs., Inc.*, 820 F. Supp. 2d 1293, 1304 (S.D. Fla. 2011) (dismissing negligent misrepresentation claim where there was nothing more than "the allegation that Defendants' reports were 'false and/or materially inaccurate,'" and complaint contained "no further allegations providing details about how and to what extent the Defendants' reports somehow misrepresented the quality of Plaintiff's work."). The allegations of written representations approving LRA also fail. ABS Services alleges generally that Braun and Vulcan made several representations in writing approving LRA, but provides no details about these representations aside from mentioning Braun's "revised geotechnical report"—that

7

is, the July 5, 2024 report. *See* Doc. 71 at ¶¶186-97. From this report and other statements, ABS Services believed that it could use LRA. *See id.* But the report does not say so in express terms, *see, e.g.*, Doc. 76 at 3-5, 8-9, and ABS Services never identifies the precise statements in the report that it finds objectionable or how ABS Services reasonably found them to be misleading, *see generally* Doc. 71; *see also Reach Air Med. Servs. LLC*, 160 F.4th at 1121 (requiring allegations of "precisely what statements or omissions were made in which documents or oral representations" and "the content of such statements and the manner in which they misled the plaintiff"); *cf. W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 87 (11th Cir. 2008) (plaintiff's "generalized allegations" that "voluminous documents contain 'examples' of false statements somewhere within them fail to satisfy Rule 9(b)").

In the motion-to-dismiss briefing, ABS Services and Braun debate whether the reports approved the use of LRA. *See* Doc. 76 at 3-5, 8-12; Doc. 90 at 8-9; Doc. 92 at 7-11. Braun explains that the report does not "say that LRA is the equivalent of flexible base" or that "LRA could be used or was approved for use as part of the subgrade improvements beneath the MSE Wall." Doc. 76 at 9. While the report "calls out the specific features or site elements … where LRA use is an alternative," it did not make that representation for "the subgrade improvements below the MSE Wall." *Id.* ABS Services accuses Braun of reading the report too narrowly: In context, ABS

Services argues, those representations "conveyed that limestone rock asphalt was suitable for the base material." Doc. 90 at 8-9. ABS Services hardly fleshes out the theory for why this interpretation is reasonable, but the Court has no occasion to weigh in on the debate. That is because what matters is not whether ABS Services' opposition explains with particularity the basis for its claim, but whether its complaint does so. It does not. ABS Services has therefore not satisfied Rule 9(b).[2] Count I is thus **DISMISSED WITHOUT PREJUDICE**.

## II.    Count VI: Implied Warranty

ABS Services alleges that Vulcan breached an implied warranty that the LRA was fit for use as base material. Doc. 71 at ¶¶220-24. ABS Services must prove "(1) the existence of the implied warranty; (2) breach of the implied warranty; and (3) damages proximately resulting from that breach." *Federated Mut. Ins. Co. v. Marubeni Citizen-Cincom, Inc.*, No. 2:06-cv-1922, 2008 WL 11422547, at *11 (N.D. Ala. Oct. 23, 2008). ABS Services failed to allege the existence of an implied warranty.

Implied warranties are "created by Alabama's version of the Uniform Commercial Code." *Gordon v. Acrocrete, Inc.*, 5-cv-329, 2006 WL 1096156, at *5

---

[2] Even if ABS Services had pleaded with particularity its allegations involving the final report, Vulcan highlights a problem with ABS Services' alleged reliance on it. Doc. 78 at 5-6. The report allegedly approving use of LRA was issued on July 5, 2024, *after* ABS Services began constructing the wall. Doc. 71 at ¶¶109, 121. If this report were Braun and Vulcan's only approval of LRA, it's hard to see how ABS Services could establish reliance.

(S.D. Ala. Apr. 24, 2006). An implied warranty of fitness for a particular purpose attaches when "the *seller* at the time of contracting has reason to know any particular purpose for which the goods are required and that the *buyer* is relying on the seller's skill or judgment to select or furnish suitable goods." ALA. CODE § 7-2-315 (emphasis added). This requires a "seller" and a "buyer." *Id.*; *see also id.* § 7-2-102 (UCC applies to "transactions in goods"). A "buyer" is a "person who buys or contracts to buy goods." *Id.* § 7-2-103(1)(a). A "seller" is a "person who sells or contracts to sell goods." *Id.* § 7-2-103(1)(d); *see also id.* § 7-2-106(1) ("sale" defined as "the passing of title from the seller to the buyer for a price").

ABS Services fails to state a claim. Though ABS Services does not allege that it was a "buyer," it does allege in conclusory fashion that Vulcan "was a seller of Vulcan's LRA material." Doc. 71 at ¶221. This conclusion is not supported by any well-pleaded allegation. Vulcan hired ABS Services to build a wall, and Vulcan provided ABS Services with raw materials to use in that project. *Id.* at ¶¶75-76, 80-81, 87-88. But Vulcan did not sell anything to ABS Services.

ABS Services argues it has alleged a sale because it is plausible that "the cost of the limestone rock asphalt was embedded in the overall contractual arrangement." Doc. 91 at 7. They contend that had Vulcan not agreed to provide the base material, the price of the contract would increase because Vulcan or ABS Service would need to purchase the base material from a third party. *Id.* at 6. The permissible inference

10

from this, however, is that the cost was "embedded" in the agreement in the sense that ABS Services charged Vulcan less than it would have had ABS Services needed to purchase the material and then pass the costs on to Vulcan. This does not help ABS Services because Vulcan's cost-saving measure did not amount to a "purchase" or "price paid" by ABS Services. *Id.* at 7. And the argument proves too much. Vulcan, for example, allowed ABS Services onto Vulcan's property for an extended period to build the wall, but didn't charge ABS Services a leasing fee for the right to occupy the property. That does not mean that the services contract between Vulcan and ABS also included an implicit leasing agreement too.

ABS Services is correct that the Alabama Supreme Court has not "rigidly" interpreted the term seller. *Id.* For example, it has interpreted the term "seller" to include sellers of services who use goods to perform the service, *see Skelton v. Druid City Hosp. Bd.*, 459 So. 2d 818 (Ala. 1984), and undisclosed agents of sellers, *see Ala. Powersport Auction, LLC v. Wiese*, 143 So. 3d 713 (Ala. 2013). Unlike in those cases, however, when Vulcan provided the material to be used in its own wall, it was not a seller under any fair interpretation of the term.[3] Count VI is therefore **DISMISSED WITH PREJUDICE**.

---

[3] Though ABS Services claims courts have recognized an implied warranty in similar cases, it does so without specifying which courts and without citing any cases. Doc. 91 at 7 ("Courts have recognized that the furnishing of materials by one party to another, even in the context of a broader construction or service agreement, may give rise to implied warranty claims under the U.C.C.").

11

### III.    Count X: Defamation

ABS Services claims that Vulcan made "false and defamatory statements" about it; specifically, "that the ABS MSE Dump Structure failed due to defects in ABS's design or construction" and "that ABS was responsible for the excessive settlement." Doc. 71 at ¶239. ABS Services alleges these statements were published "to third parties in the mining industry," made negligently or with actual malice, and caused reputational harm and significant loss of business. *Id.* at ¶¶241-45.

Vulcan counters that ABS Services failed to plead factual details sufficient to raise its defamation claim above the speculative level. Doc. 78 at 8-12. Namely, details about the statements themselves or facts showing Vulcan acted with requisite fault. *Id.* Vulcan also argues the claim is barred by Alabama's litigation privilege. *Id.*

The parties also dispute whether Alabama or Mississippi law governs. *See id.*; *see also* Doc. 91 at 8-10. ABS Services argues that under *lex loci delicti*, Mississippi law controls because Alabama applies the law of the state where the last event necessary to establish liability occurred. Doc. 91 at 9 (citing *Ex parte U.S. Bank Nat'l Ass'n*, 148 So. 3d 1060, 1070 (Ala. 2014)). ABS Services places that event in Mississippi, where it suffered damages. *Id.* at 10. But this fails on ABS's own theory: if Vulcan's statements "constitute slander per se," Doc. 71 at ¶242, the tort was complete the moment Vulcan published the statement, before ABS Services suffered any harm, *see Liberty Nat'l Life Ins. Co. v. Daugherty*, 840 So. 2d 152, 157 (Ala.

2002) ("Words found to be slander per se relieve the plaintiff of the requirement of proving actual harm to reputation or any other damage in order to recover nominal or compensatory damages.") (internal quotation omitted). And because ABS Services does not specify where the defamatory statement was made, it is reasonable to infer that it was made from where Vulcan is headquartered: Jefferson County, Alabama. *See* Doc. 71 at ¶12. Thus, Alabama law applies.

Under Alabama law, a plaintiff must show: (1) a false and defamatory statement about the plaintiff; (2) unprivileged communication to a third party; (3) fault at least amounting to negligence; and (4) either actionability regardless of special harm, or special harm from publication. *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003).

Alabama law requires defamatory statements to have been made with at least negligence. *Id.* ABS Services alleges that Vulcan knew ABS Services' independent testing of the limestone rock asphalt showed that it tends to consolidate excessively when used as base material, Doc. 71 at ¶131, and that this was a plausible explanation for the failure of the ABS Services MSE Dump Structure, *cf. id.* at ¶134. And it is plausible to infer that Vulcan knew the devastating effect that blaming ABS Services for the failure would have within the relevant market. *Id.* at ¶17. Given the severity of the consequences attached to that statement and the more-than-negligible

13

chance of its falsity, Vulcan's alleged failure to determine the truth of its accusation plausibly constitutes negligence. *See id.* at ¶¶134-37.

ABS Services contends that the nature of the alleged statement makes it actionable as slander per se. *Id.* at ¶242 "Damage is implied by law when spoken words are found to be slander per se." *Anderton v. Gentry*, 577 So. 2d 1261, 1263 (Ala. 1991). Thus, a plaintiff is relieved "of the requirement of proving actual harm to reputation or any other damage in order to recover nominal or compensatory damages." *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1092 (Ala. 1988) (internal quotation omitted). Slander per se occurs "when a defendant ascribes conduct to the plaintiff which is incompatible with the proper conduct of his lawful business, trade, [or] profession[.]" *Ledbetter v. United Ins. Co. of Am.*, 845 F. Supp. 844, 847 (M.D. Ala. 1994) (internal quotation omitted). An accusation that a corporation negligently engaged in one of its core professional practices, in this case the designing and construction of industrial equipment, quintessentially ascribes conduct "incompatible with the proper conduct of [its] lawful business," *id.*, and is therefore actionable as slander per se.

While state law "determines the elements of a defamation claim, federal law [specifically, Rule 8(a)(2), Federal Rules of Civil Procedure] supplies the standard for pleading that claim." *Gould v. Sacred Heart Hosp. of Pensacola*, No. 86-4392, 1988 WL 1017208, at *16 (N.D. Fla. June 29, 1988) (citing *Caster v. Hennessey*,

781 F.2d 1569, 1570 (11th Cir. 1986)). Thus, federal law governs "the specificity with which the plaintiff must plead the alleged defamatory statements." *Id.*

While ABS Services need not plead the verbatim content of the allegedly defamatory statement, *see, e.g.*, *W.P. Prods., Inc. v. Tramontina USA, Inc.*, No. 18-cv-63162, 2019 WL 10092981, at *7 (S.D. Fla. July 30, 2019); *cf. Lee v. Crump*, 40 So. 609, 609 (Ala. 1906), it must at least state when, where, and to whom the statement was published, *see Lemak v. Exactech, Inc.*, No. 2:22-cv-832, 2023 WL 12144180, at *10 (N.D. Ala. June 29, 2023) (citing *McGuire v. Adkins*, 226 So. 2d 659, 661 (Ala. 1969)); *see also Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1153 (5th Cir. 2021) ("To plead defamation in federal court, a plaintiff generally must specify when and where the statement was published. Otherwise, the claim may be too vague to give adequate notice to the defendant of the claim he must contest.").

ABS Services generally identifies the recipients of the defamatory statement: "Braun, Geotechnical Engineering Associates, LLC, Ground Improvement Systems, LLC, Geo/Structural Services Group, LLC, MSHA inspectors, W.T. Byler Co., and Synergy." Doc. 71 at ¶174. But ABS Services "hasn't attached the allegedly defamatory statements, described their contents, or told us when (or by whom) they were made. We don't even know whether there was one statement or many." *Sullenberger v. City of Coral Gables*, No. 22-cv-21830, 2025 WL 101703, at *37 (S.D. Fla. Jan. 15, 2025). Thus, the Court and Vulcan cannot "evaluat[e] whether

that statement (or statements) was (or were) defamatory." *Id.* Without more, ABS Services fails to provide Vulcan with adequate notice of the nature of the claim asserted against it. *See Sarver v. Jackson*, 344 F. App'x 526, 529 (11th Cir. 2009) ("The district court correctly found [Plaintiff] failed to state a claim, as her complaint failed to identify any specific written or verbal statements attributed to the defendants."); *cf. Alexander v. City of Muscle Shoals, Ala.*, 766 F. Supp. 2d 1214, 1229 (N.D. Ala. Jan. 26, 2011) ("At the very least, a complaint must put a defendant 'on notice as to the claim being asserted against him and the grounds on which it rests.'" (quoting *Sams v. United Food & Com. Workers Int'l Union, AFL-CIO, CLC*, 866 F.2d 1380, 1384 (11th Cir. 1989)), *aff'd sub nom. Alexander v. City of Muscle Shoals, AL*, 444 F. App'x 343 (11th Cir. 2011).

ABS Services has therefore failed to plead its defamation claim adequately, and so, it warrants dismissal. Nevertheless, the Court evaluates Vulcan's invocation of the litigation privilege under Alabama law because it may resolve the claim on the merits.

Alabama has adopted the litigation privilege rule "as set out in the *Restatement*," which states that "[a] party to a private litigation … is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates," so long as

16

"the matter has some relation to the proceeding." *Walker v. Majors*, 496 So. 2d 726, 729 (Ala. 1986) (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 587 (1977)). "[F]or the litigation privilege to apply, an allegedly defamatory communication need not occur during a judicial proceeding" and "[i]t is enough that the communication is directly related and clearly relevant to a judicial proceeding that was 'contemplated in good faith and under serious consideration.'" *Borden v. Malone*, 327 So. 3d 1105, 1116 (Ala. 2020).

The litigation privilege is an affirmative defense. *See July v. Terminix Int'l Co.*, 387 F. Supp. 3d 1306, 1315 (S.D. Ala. 2019). Nevertheless, "a court may dismiss a complaint" under the privilege if its applicability is clear from the face of the complaint. *Id.*

Vulcan has not demonstrated at the pleadings stage that the litigation privilege applies. Though communications "need not occur during a judicial proceeding" to be protected, a defendants risks losing the privilege by publishing statements to those without "a direct or close relationship" to the proceeding. *Borden*, 327 So. 3d at 1116-17. Here, it is unclear whether this requirement is satisfied. ABS Services alleges that Vulcan made defamatory statements to companies not participating in this litigation and whose relationships with Vulcan and ABS Services are far from obvious. Doc. 71 at ¶174. Without greater clarity as to the when, where, and to whom of Vulcan's statements, the Court cannot say one way or another if Vulcan published

17

statements "outside the circle of those who must have knowledge of them pursuant to the decision-making process." *Webster v. Byrd*, 494 So. 2d 31, 35 (Ala. 1986); *see also* Doc. 93 at 8 (Vulcan agreeing that the Court cannot "assess … whether any privilege applies."). Thus, the Court will not apply the litigation privilege to dismiss this count with prejudice.[4]

## IV.    Count XI: Tortious Interference with Contract

ABS Services claims it "had existing business relationships" with Vulcan and "prospective business relations" with "other third parties in the mining industry." Doc. 71 at ¶¶246-49. It further alleges that Vulcan knew about these relationships and intentionally interfered "by blacklisting ABS and by making false statements about ABS and the ABS MSE Dump Structure to third parties in the mining industry." *Id.*

Vulcan's response follows two tracks: first, that it was not a stranger to the business relationships at issue; and second, that ABS Services fails to identify the specific third-party relationships allegedly disrupted. Doc. 78 at 13-16.

To establish tortious interference with a contract or business relationship, "the plaintiff must first demonstrate the existence of a contract or a business relationship

---

[4] Vulcan also raised a Texas law anti-SLAPP defense. Doc. 78 at 12-13; *see also id.* at 13 n.3 (citing Georgia and Tennessee anti-SLAPP statutes in a footnote). The Texas statute does not apply in federal court. *See Klocke v. Watson*, 936 F.3d 240, 242 (5th Cir. 2019); *see also Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1347 (11th Cir. 2018) ("[T]he special-dismissal provision of the Georgia anti-SLAPP statute does not apply in federal court.").

18

between the plaintiff and a third party." *Beachcroft Props., LLP v. City of Alabaster*, 901 So. 2d 703, 707-08 (Ala. 2004) (emphasis omitted); *see also O.W.O. Invs., Inc. v. Stone Inv. Co.*, 32 So. 3d 439, 449 (Miss. 2010).

ABS Services identifies several third parties, the same ones named in its defamation claim: "Braun, Geotechnical Engineering Associates, LLC, Ground Improvement Systems, LLC, Geo/Structural Services Group, LLC, MSHA inspectors, W.T. Byler Co., and Synergy." Doc. 71 at ¶174.

ABS Services nevertheless fails to show an existing "contract or a business relationship" with any of them. *Beachcroft Props., LLP*, 901 So. 2d at 707-08. It alleges generally that Vulcan's conduct caused a 93% drop in its income, Doc. 71 at ¶¶168-69, but does not show whether these third parties contributed to that decline or describe the nature of those relationships. That ambiguity is exacerbated by the fact that ABS also claims to have "lost business relationships with multiple of [Vulcan]'s Divisions throughout the United States." *Id.* at ¶170. The Court is therefore left to speculate as to what effect (if any) Vulcan's conduct had on a third-party relationship, and whether those relationships were legally protected.

Further, ABS Services tries to include business relationships with Vulcan Construction Materials, LLC and its parent company Vulcan Materials Company, Inc. *See* Doc. 91 at 21. But Vulcan Construction cannot be liable for interfering with ABS's relationships with Vulcan Construction because it is not "a 'third party' or

'stranger' to the contract or business relationship[s] with which [it] allegedly interfered." *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003).

The same is true as to Vulcan Materials. "A defendant is a party in interest to a relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Id.* To the extent ABS alleges that Vulcan Construction interfered with an ABS relationship with Vulcan Materials, the claim still fails because Vulcan Construction is "wholly-owned by Vulcan Materials." Doc. 71 at 15 ¶13. ABS "bears the burden of proving that [Vulcan Materials] is a 'third party' or 'stranger'" to ABS's relationships with Vulcan Construction, *Waddell & Reed*, 875 So. 2d at 1154, but has instead confirmed the close relationship between the Vulcan entities. Indeed, ABS's complaint even sometimes refers to the two entities "together" as simply "Vulcan." Doc. 71 at 12. Accordingly, ABS Services has failed to state a claim for tortious interference with contract.

Count XI is therefore **DISMISSED WITH PREJUDICE** as to claims arising from contracts between ABS and Vulcan, but **WITHOUT PREJUDICE** otherwise.

## V.    Shotgun Pleading

In the Court's March 10, 2026 Order, (Doc. 69) it directed ABS Services to cure a shotgun pleading problem. In particular, the Court explained that "[e]ach of its counts reallege all proceeding counts," and thus ABS Services needed to "file a

20

complaint that points to the specific paragraphs that it intends to reincorporate in each count." Doc. 69 at 15-16. ABS Services has resolved this problem. Each of its claims incorporate specific allegations rather than generically reincorporating all proceeding allegations. Braun's claim that ABS Services violated the Court's "express[]" directions for repleading is therefore mistaken. Doc. 76 at 6; *see also* Doc. 92 at 2 ("ABS has failed to cure the pleading deficiencies expressly identified by this Court in its March 10, 2026, Order").

## VI.    Motion for Leave to Amend.

Around a month after Vulcan and Braun filed their motion-to-dismiss reply briefs, ABS Services sought leave to file a Second Amended Answer, Defenses, Counterclaims, and Third-Party Claims. Doc. 99. ABS Services says that the amendments were prompted by "newly developed deposition testimony" supporting its theory that Vulcan is responsible for the wall's failure. *Id.* at 5. In light of this evidence, ABS Services wishes to add several fraud claims against Vulcan. *Id.* at 2. ABS Services also wants to add more detail to existing claims, like its negligent-misrepresentation claims against Vulcan and Braun. *Id.* at 6. The opposition briefs focus on the new fraud claims and the negligent misrepresentation claims, so the Court does the same.

This motion for leave to amend comes after the amendment deadline in the scheduling order. *See* Docs. 48, 52, 56. Therefore, ABS Services must satisfy the

21

good cause standard of Rule 16(b)(4), and, if it does, must then show that "justice … requires" amendment under Rule 15(a)(2). If ABS Services fails on either front, its motion must be denied. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Good cause exists under Rule 16(b)(4) when, despite its diligence, the party could not have amended its claims before the pleading deadline. *Id.* ABS Services argues that it has good cause because "it first receive[d] notice of the need to amend after the deadline expire[d]." Doc. 99 at 12. ABS Services purports to have uncovered "direct evidence of fraud and misrepresentation" after the deadline for adding new claims. *Id.* at 13. The key fact "triggering" amendment is that Vulcan recanted its interrogatory response stating that Braun tested and approved LRA for the wall and instead now claims that, although Braun tested the material, it did so for different parts of the project. *See id.* at 2-4; Doc. 105 at 3-5. ABS Services also claims to have uncovered more evidence of false statements, including testimony that Vulcan falsely represented to Braun and ABS Services that LRA was a flexbase material. Doc. 99 at 3-4.

ABS Services has not established good cause to assert additional claims. Those new claims include fraudulent inducement, fraudulent misrepresentation, fraud by nondisclosure, and misrepresentation and suppression of material facts. *See* Doc. 99-2 (Counts XIV-XVII). ABS Services has no good reason to plead these new

claims so late in the case because they rest on the same "ultimate theory," Doc. 99 at 6, that ABS Services has pressed for almost a year: that Vulcan and Braun "knew or should have known" that LRA is not a proper base material. Doc. 10 at ¶145; *see Kmak v. Am. Century Companies*, 873 F.3d 1030, 1034 (8th Cir. 2017) (affirming denial of leave to amend to assert new claims that were "legal variations on a theme the parties had been litigating for years"); *see also Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1298-99 (11th Cir. 2007).

ABS Services' new claims emphasize intentional wrongdoing, but this is also something that ABS Services could have pleaded before the deadline. It alleged as much in its original counterclaims, months before the deadline. Doc. 10 at ¶166 (alleging that Vulcan "consciously, recklessly, intentionally, or maliciously misrepresented the suitability of the subbase material provided for the ABS MSE Dump Structure, along with other acts and omissions"). And as ABS Services emphasizes in its reply, it possessed a key document with an alleged misrepresentation more than a year before Vulcan sued. Doc. 105 at 3. Based on these facts, ABS Services has not shown a sufficient reason for not raising these new claims before the amendment deadline. *See Callwood v. Jones*, 727 F. App'x 552, 557 (11th Cir. 2018) (holding that because plaintiff possessed documentary evidence before the deadline to amend, later "deposition testimony to the same effect did not

23

present new information sufficient to show good cause"). ABS Services may not file an amended complaint asserting these claims.

ABS Services has shown good cause to add more detail to its negligent misrepresentation claims against Vulcan and Braun. The purpose of the proposed amendments is to provide details necessary for the claim to comply with Rule 9(b)'s particularity requirement. Doc. 99 at 6. ABS Services attempted to remedy this problem not long after Vulcan and Braun identified it, *id.* at 10, and Vulcan and Braun bear some responsibility for ABS Services waiting until after the deadline to remedy it. This defect existed when Vulcan and Braun filed their first responses, but neither Vulcan nor Braun properly raised it. *See* Doc. 16 at ¶¶144-56; Doc. 34. Those responses were filed well before the amendment deadline and thus had either of them done so, ABS Services could have amended. Vulcan and Braun instead gave ABS Services reason to believe that its negligent misrepresentation claim provided them "sufficient information to formulate a defense by putting [them] on notice of the conduct complained of," *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006), by sitting on this argument and then raising only after the Court allowed ABS Services to amend and after the amendment deadline. ABS Services thus has good cause for its delay. *Cf. Pears v. Mobile Cnty.*, 645 F. Supp. 2d 1062, 1088 (S.D. Ala. 2009) (finding good cause based in part on the "defendants'

24

role in misleading [the plaintiff] until th[e] deadline had passed"); FED. R. CIV. P. 12(g)(2).

The negligent misrepresentation claims survive under Rule 16(b)(4), but they must also pass muster under Rule 15(a)(2). *See Pettaway v. Barber*, No. 2:19-cv-8, 2022 WL 1110485, at *1 (M.D. Ala. Apr. 11, 2022). Under Rule 15(a)(2), courts should "freely give leave when justice so requires." "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Nevertheless, a motion for leave to amend may appropriately be denied (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* at 1108-09 (internal quotation omitted). Neither of the first two circumstances apply here. ABS Services remedied through amendment the defect that the Court identified earlier in the case, and neither Vulcan nor Braun have advanced any meaningful argument for prejudice. The dispositive issue is thus futility.

Amendment is futile when the proposed amended count remains subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). ABS Services' proposed amendments to its negligent misrepresentation claim against Vulcan are not futile because the amendments include a specific allegation that remedies the Rule 9(b) shortcoming. *See* Doc. 99-1 at ¶242 (alleging that Vulcan's project manager "transmitted to ABS[] … a written submittal representing Vulcan's LRA to be TxDOT Standard Specification Item 247 flexible base material"). Vulcan disputes that allegation's accuracy and ABS Services' reliance on it, Doc. 103 at 8-11, but its arguments are unpersuasive because the question for now is whether ABS Services' allegations could withstand a motion to dismiss, not whether the claim is likely to prevail on the merits, *see Est. of Faull by Jacobus v. McAfee*, 727 F. App'x 548, 551 (11th Cir. 2018); *Spearman v. Broker Sols., Inc.*, No. 1:20-cv-4981, 2022 WL 1716438, at *2 (N.D. Ga. Feb. 16, 2022). The amendments to the negligent misrepresentation claim against Braun, on the other hand, are futile because ABS Services still does not allege enough specifics about any misleading statement purportedly made by Braun. *See* Doc. 99-1 at ¶¶238-58.

Thus, ABS Services' motion for leave to amend is **GRANTED IN PART** and **DENIED IN PART**. The amended complaint may include additional allegations regarding the specific misrepresentation from Vulcan that ABS Services pleaded in the proposed amended complaint. The negligent misrepresentation claim against

26

Braun and the implied warranty, defamation, and tortious interference claims against Vulcan remain dismissed. The proposed amendments to those counts do not remedy the defects identified in this order and thus ABS Services may not amend them. Other changes that are in the proposed amended complaint and not forbidden here may be included, but ABS Services may not include in its amended complaint any additions absent from the complaint it has already proposed to the Court.

## CONCLUSION

Braun's Motion to Dismiss (Doc. 75) is **GRANTED IN PART**. As to Braun, Count I is **DISMISSED WITHOUT PREJUDICE**. Braun's motion is otherwise **DENIED** for the reasons given in the Court's previous motion to dismiss order (Doc. 69).

Vulcan's Motion to Dismiss (Doc. 78) is **GRANTED IN PART**. As to Vulcan, Count I is **DISMISSED WITHOUT PREJUDICE**. Count VI is **DISMISSED WITH PREJUDICE**. Count X is **DISMISSED WITHOUT PREJUDICE**. Count XI is **DISMISSED WITH PREJUDICE** as to claims arising from contracts between ABS and Vulcan, but **WITHOUT PREJUDICE** otherwise.

ABS Services' Motion for Leave to Amend (Doc. 99) is **GRANTED IN PART** and **DENIED IN PART**. On or before August 12, 2026, ABS Services may file a second amended answer that complies with the instructions in this order.

**DONE** and **ORDERED** this 5th day of August, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE

28